## NORTHWESTERN TRUST COMPANY, a Corporation, v. F. T. FOX.

(157 N. W. 472.)

**Corporate stock — note given for — suit on note — consideration — failure — evidence — verdict — not supported — new trial — motion for — denied — error.**

    Suit upon a note given in part payment of corporate stock. Defense was failure of consideration. Evidence examined, and *held* not to support the verdict rendered by the jury in favor of the defendant. For this reason the trial court should have allowed plaintiff's motion for a new trial.

Opinion filed March 25, 1916.

Appeal from the District Court of Ramsey County, *Bultz,* J. Reversed.

*Bangs, Netcher, & Hamilton,* and *Cuthbert & Smythe,* for appellant.

Where a note is assigned and later on the assignee and holder obtains from the maker a new note for the amount of the old or assigned note, in lieu thereof, and made payable to himself, it is founded upon a

valuable consideration, and independent of that on which the original note was founded; a failure of consideration of the original note is no defense in an action on the latter. 8 Cyc. 36; Williams v. Rank, 1 Ind. 230.

While fraud or artifice exists in the taking of a note, causing a failure of consideration, this may be shown in a suit on the note, between the original parties; but such defense is not, as a rule, allowed in a suit by a bona fide holder for value. 8 Cyc. 38.

Negligence on the part of the maker defeats any immunity under this rule, even though fraud is shown between the original parties. 8 Cyc. 41.

The fraud necessary to defeat a recovery by a bona fide holder, assignee, of a promissory note before maturity, must relate to the execution, and not to the consideration, of the note. Gray v. Goode, 72 Ill. App. 504; Plumb v. Niles, 34 Vt. 231.

A debtor, by his conduct in inducing the assignee to believe that the obligation will be met and that there is no defense thereto, may be held to have waived the right to avail himself of a set-off against the assignor in an action by the assignee. Vallancey v. Hunt, 20 N. D. 589, 34 L.R.A.(N.S.) 473, 129 N. W. 455; Musselman v. McElhenny, 23 Ind. 4, 85 Am. Dec. 445; Forbes v. Espy, 21 Ohio St. 483; 8 Cyc. 64, Estoppel.

The equity doctrine of estoppel *in pais* applies in this case. After the conduct of defendant in holding out to plaintiff the fact that the obligation was good, and plaintiff has changed his position to his detriment, in reliance upon the representations of defendant, estoppel arises, and defendant will not be allowed to interpose any defense. Haugen v. Skjervheim, 13 N. D. 616, 102 N. W. 311; Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711; Eickelberg v. Soper, 1 S. D. 563, 47 N. W. 953; Sutton v. Consolidated Apex Min. Co. 15 S. D. 410, 89 N. W. 1020; Dezell v. Odell, 38 Am. Dec. 631, note.

*R. Goer* and *Miller, Zuger, & Tillotson,* for respondent.

Where a necessary witness has not been subpœnaed, and no such effort made to secure his presence upon the trial, the party has been negligent and lax in his own interests.

The answer here discloses the name of the witness or person with whom defendant had his dealings, and this surely was sufficient to

enable plaintiff to know that such person was a material witness for their side of the case. Under these circumstances, the absence of such witness affords no ground for a new trial.

Further, the affidavit of this witness himself shows that he was informed long before the trial by the plaintiff's attorneys, that he would be needed as a witness on the trial. Josephson v. Sigfusson, 13 N. D. 312, 100 N. W. 703; Gaines v. White, 1 S. D. 434, 47 N. W. 524; Weiss v. Evans, 13 S. D. 185, 82 N. W. 388.

Defendant asked no continuance to secure witnesses, nor did they make any effort to that end. Smith v. Shook, 30 Mont. 30, 75 Pac. 513.

"While fraud is never presumed and must be proved, it is not necessary that it be proved by direct evidence; it may be shown by facts and circumstances connected with the transaction. Klauber v. Schloss, 198 Mo. 502, 115 Am. St. Rep. 486, 95 S. W. 930.

The existence of a contemporaneous parol agreement between the parties under the influence of which a note or contract is made and delivered, and which is violated at once after obtaining the note, may always be shown when enforcement of note is attempted. Clinch Valley Coal & I. Co. v. Willing, 180 Pa. 165, 57 Am. St. Rep. 626, 36 Atl. 737.

A promise made with the intention not to perform it constitutes fraud for which a contract may be avoided or rescinded. Russ Lumber & Mill Co. v. Muscupiabe Land & Water Co. 120 Cal. 521, 65 Am. St. Rep. 186, 52 Pac. 995.

And this is so with each successive renewal. Turle v. Sargent, 63 Minn. 211, 56 Am. St. Rep. 475, 65 N. W. 349; Clare County Sav. Bank v. Featherly, 173 Mich. 292, 139 N. W. 61; 17 Cyc. 713 et seq; American Bldg. & L. Asso. v. Dahl, 54 Minn. 355, 56 N. W. 47.

BURKE, J. Appeal from an order denying plaintiff a new trial. Said motion was based upon many grounds, among them insufficiency of the evidence to support the verdict, estoppel of defendant to maintain his defense, errors in admitting and excluding proof, and newly discovered evidence. It will not be necessary for us to discuss all of those. The facts leading up to the motion for a new trial are in part as follows: In March, 1912, one C. A. Hale solicited the defendant to

buy stock in the Great Northern Life Insurance Company and possibly in the Great Northern Underwriter's Company, there being a sharp dispute as to the underwriting stock. After some negotiations, Mr. Fox agreed to purchase ten shares of stock (of some kind) of the par value of $100 each, and executed his promissory note for $1,000 running to the Great Northern Underwriter's Company. The note was sold to this plaintiff. Shares of stock were issued, five in the life insurance company and five in the underwriter's company, and held as collateral to the notes. The note was not paid at maturity, and, in response to a demand for payment, defendant wrote the following letter:

In reply to yours of the 26th will say I will rustle the interest on the note shortly after the first of the year, say January 10th, but it will be impossible for me to take up the note, at least until next fall. With all the big crop—fully 50 per cent of the farmer trade asked to be carried over and in fact demanded it. Hoping this will meet with your approval.

(Signed)   F. T. Fox.

Plaintiff waited until after January 10th, but did not receive the interest, and on May 14, 1913, suit was begun upon the note. June 4, 1913, an answer was interposed, and on August 13, 1913, an amended answer. The case was set for trial January 27, 1914, and on the day of the trial negotiations for settlement were had whereby the defendant gave two notes of $500 each and three notes for the interest amounting to $179.66, all running to the Northwestern Trust Company. At this time the original $1,000 note was canceled and delivered to defendant and the suit dismissed. When the first of the interest notes, being one for $79.66, became due and remained unpaid, a suit was begun thereon in justice court. Judgment was entered in favor of plaintiff and appeal taken to the district court. It was upon this trial that the errors alleged occurred that formed part of the basis for the motion for a new trial. Judgment was rendered in favor of the defendant and this appeal follows. The answer in this case alleged that at the time the original $1,000 note was given, Mr. Hale had agreed with him to deliver to him immediately the ten shares of the Great Northern Life Insurance stock, and had agreed that the note itself should not be trans-

ferred. He claims that both of those promises were broken. Among the errors alleged to have occurred at the trial was the refusal of the trial court to allow the original answer and amended answer, interposed by defendant, upon the $1,000 note, to be received in evidence as an admission that at that time defendant knew that the notes were payable to the underwriter's company. Error was also predicated upon the refusal of the trial court to allow plaintiff to show that the original $1,000 note was payable to the Great Northern Underwriter's Company, as an impeachment of the testimony of the defendant that said note was in favor of the life insurance company. Error was also predicated upon the admission in evidence of two letters from the Great Northern Life Insurance Company written to the defendant, one of the letters being written long before the $1,000 note was signed, the other being merely a formal notice of a meeting of stockholders. As defendant concedes he was to have at least five shares of this stock, the fact that he received a notice of a stockholders' meeting would not have the slightest tendency to show that the company recognized him as owner of ten shares. As a matter of fact, the trial court struck out both of those letters, but without any caution to the jury to disregard the same. These and other serious errors were argued, together with the main contention, to wit, that the defendant wholly failed by his evidence to substantiate his claim that the stock was to be entirely that of the life insurance company, and that defendant is now estopped to make such defense in view of his previous conduct in signing the original note, in signing the renewal notes, in writing the letter promising to pay the original note, and serving two answers showing other defenses. We believe appellant is correct in this contention, but prefer to put our holding upon this proposition, to wit, that plaintiff's evidence does not establish his defense of failure of consideration. Upon the actual trial the witness Hale was not present, but defendant testifies regarding the conversation with him. Although cross-examined by his own attorney, he failed—as we believe—to testify to the defense outlined in his answer.

Finally, the court examined him and said:

Q. You have got to give this conversation as near as you can remember the talk back and forth.

A. I don't know that I can repeat it just as it happened.

Q. Well, do the best you can at it.

A. As near as I can remember they came in and wanted to settle with new notes—two—for that stock—I think that was the talk.

Q. And what did you say to them when they wanted new notes?

A. Well, I hesitated for a while and they persuaded me.

Q. Now, what did you say to them—or. did you say anything to them?

A. Yes, I did.

Q. All right, what did you say?

A. I asked them if the stock was worthy of the price and how soon I was to get it. . . .

Q. What did they say?

A. They agreed to deliver it.

Q. No—*what did they say?*

A. I don't remember what he did say.

At this point his attorney attempted to lead him into a positive statement, but he was stopped by the court, and when the proper question was asked he answered:

A. Well, now, I could not quite—I don't quite remember what our conversation was. . . .

By the Court: What did they say to that?

A. They finally told me—I think that it was—that it had been issued—that something was wrong. I don't know what it was, now. I don't remember exactly. And he claimed at that time he had that stock with him. He did not give it to me nor show it to me. I did not look at it; and he finally—I signed these new notes with the expectation of getting this stock at that time, which they refused to deliver. . . . They claimed they were going to hold that stock after it was issued for security.

Q. To the notes?

A. To the notes. But it has never been delivered, nor did I ever see it.

Again defendant's counsel attempts to lead him into a positive state-

ment, but was again stopped by the court upon objection of plaintiff. Later in his testimony the following occurred:

A. I asked him why I was not receiving the stock, and he said that they held it and they were holding it for security—and that was after I settled with him the last time.

Q. Was that after you settled with him?

A. Yes, and that they would hold it for security.

There is much more of this kind of testimony, but we have no hesitation in saying upon the whole record, which we have carefully examined, there is a total failure of proof of the only defense interposed. Taken in connection with the serious question of defendant's estoppel; the errors in the reception and rejection of testimony; the fact that defendant admits he was allowed one half of the stock he ordered; to say nothing of the new evidence offered,—it was clearly an abuse of discretion in the trial court to refuse a new trial to plaintiff. For this reason the order of the trial court is reversed.